# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Israel Alvarado (a/k/a Israel Alvarado-Marquez, Israel Alberto Alvarado-Marquez, and Israel Alberto Alvarado) | ) Case No. 3:25-mj-70746 MAG |
| *Defendant(s)* | |

**FILED**
Jun 17 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 28, 2025__ in the county of __San Francisco__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & (b)(1)(C) | Distribution of a mixture or substance containing a detectable amount of methamphetamine<br>Maximum penalites:<br>- 20 years prison<br>- $1 million fine<br>- Lifetime supervised release with a mandatory minimum of three years<br>- Mandatory $100 special assessment<br>- Forfeiture, potential deportation, denial of federal benefits |

This criminal complaint is based on these facts:

See attached affidvait of DEA TFO Domenico Discenza.

☑ Continued on the attached sheet.

/s/ Domenico Discenza
*Complainant's signature*

Approved as to form  /s/ Noah Stern
AUSA  Noah Stern

Domenico Discenza, DEA Task Force Officer
*Printed name and title*

Sworn to before me by telephone.

Date: 06/17/2025

*Judge's signature*

City and state: San Francisco, California

Hon. Thomas S. Hixson, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Domenico Discenza, a Task Force Officer with the Drug Enforcement Administration ("DEA"), having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging ISRAEL ALVARADO (a/k/a Israel Alvarado-Marquez, Israel Alberto Alvarado-Marquez, and Israel Alberto Alvarado) ("ALVARADO"), with one count of distribution of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), occurring on or about May 28, 2025, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses, including information in San Francisco Police Department ("SFPD") reports. Where statements made by other individuals (including other Task Force Officers, Special Agents, and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

1

**AFFIANT BACKGROUND**

4. I am a Sergeant at the SFPD and have worked as a sworn officer for the SFPD for approximately 25 years. I have been assigned as a Sergeant at the SFPD Narcotics Unit since March 2023, and prior to that I was a Sergeant at the Strategic Investigations/Homicide Detail for approximately nine years. I am a sworn Task Force Officer ("TFO") for the Drug Enforcement Administration ("DEA"). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

5. In the police academy and at SFPD Detective School, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, interview techniques, undercover operations, and the general operation of drug trafficking organizations. During my career, I have received hundreds of hours of continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically, fentanyl investigations.

6. During my employment at SFPD, I have participated in many controlled substance investigations. I have discussed the methods and practices used by drug traffickers with other law enforcement officers. I have also had conversations with drug users and sellers over the course of my career. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of suspects and seizure of controlled substances. I have reviewed numerous reports related to drug investigations and arrests. I have also prepared search warrants and arrest warrants related to various crimes against persons investigations.

7. Based on my training and experience, as well as conversations I have had with drug dealers and experienced law enforcement officers, I have become familiar with the practices

2

of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

8.  I have also had discussions with other law enforcement officers and training in the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed. I am familiar with the appearance of marijuana, heroin, cocaine, methamphetamine, fentanyl, and other controlled substances.

9.  I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part.

## APPLICABLE STATUTE

10.  **Distribution of Methamphetamine**. The elements of distribution of methamphetamine, in violation 21 U.S.C. § 841(a)(1) and (b)(1)(C), are (1) the defendant knowingly distributed a mixture or substance containing methamphetamine; and (2) the defendant knew that it was methamphetamine or some other federal controlled substance.

## STATEMENT OF PROBABLE CAUSE

11.  By way of overview, on or about May 28, 2025, ALVARADO sold suspected methamphetamine to an undercover SFPD officer for $20 near the intersection of Larkin and O'Farrell Streets in San Francisco, California, in the Northern District of California. These facts are explained in greater detail below.

12.  On or about May 28, 2025, in the early morning (i.e., shortly after midnight), SFPD conducted an undercover buy operation near the intersection of Larkin and O'Farrell

Streets.  Based on my training and experience, I know that hand-to-hand narcotics transactions are common at this location, and the neighborhood is known for drug dealing and other criminal activity.  Prior to the operation, a SFPD officer working in an undercover capacity made timestamped photocopies of U.S. currency in his possession that he would use as marked buy-money for his anticipated controlled substances purchases.

13. The undercover officer walked to the intersection of Larkin and O'Farrell Streets and approached ALVARADO, who was standing near the intersection.  The undercover officer asked ALVARADO for "Iso," which is a street term commonly used for fentanyl.  ALVARADO told the undercover officer to follow him and ALVARADO then walked southbound on Larkin Street until they reached Ellis Street.  ALVARADO told the undercover officer to wait on the North side of Ellis Street.  ALVARADO crossed Ellis Street and then returned a short time later and told the undercover officer that he could not find fentanyl.  ALVARADO then told the undercover officer to follow him again, and ALVARDO walked northbound back to the intersection of Larkin and O'Farrell Streets.  ALVARADO then walked eastbound on O'Farrell Street until he reached the area of 735 O'Farrell Street, while the undercover officer waited at the intersection.  ALVARADO then returned to the intersection and told the undercover officer that no one had fentanyl.

14. The undercover officer asked ALVARADO for methamphetamine.  ALVARADO again walked eastbound on O'Farrell Street, leaving the undercover officer at the intersection, and returned a short time afterwards.  The undercover officer handed ALVARADO one of the $20 bills he had previously recorded (as described above) and ALVARADO gave the undercover officer suspected methamphetamine in a small plastic bag.

15. The undercover officer then gave the "buy" signal to his close cover officers.  The close cover officers maintained a visual on ALVARADO, while they radioed a description of ALVARADO to other officers that were part of an arrest team, describing ALVARADO as a Hispanic male wearing a camouflage-style hooded sweatshirt with a white hat.  The close cover officers told the arrest team to arrest ALVARADO and provided the arrest team with continuous

4

updates on ALVARADO's location. The arrest team detained ALVARADO, and identified him using his San Francisco mugshot. The close cover officers confirmed that the arrest team had arrested the person who had sold the suspected methamphetamine to the undercover officer.

16. The arrest team searched ALVARADO's person and found the $20 bill that the undercover officer had given ALVARADO in exchange for the suspected methamphetamine. The arrest team also found other U.S. currency in various denominations and a cell phone.

17. SFPD subsequently tested the suspected methamphetamine that ALVARADO sold to the undercover officer using a TruNarc device. The substance tested presumptively positive for methamphetamine. The suspected methamphetamine that ALVARADO sold to the undercover officer weighed approximately 0.6 grams gross.

## CONCLUSION

18. Based on my training and experience, and the facts and circumstances set forth above, I believe probable cause exists to believe that on or about May 28, 2025, in the Northern District of California, ALVARADO distributed a mixture or substance containing a detectable amount of methamphetamine to another person, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Accordingly, I respectfully request that the Court issue a criminal complaint and warrant for his arrest.

    /s/ Domenico Discenza
Domenico Discenza
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 17th day of June 2025. This complaint and warrants are to be filed under seal.

_____
HONORABLE THOMAS S. HIXSON
United States Magistrate Judge